# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 08-39-GF-BMM |
| Plaintiff/Respondent, | |
| vs. | ORDER GRANTING § 2255 MOTION AND SETTING RE-SENTENCING |
| BRICE HUTTINGER, | |
| Defendant/Movant. | |

This matter comes before the Court on Defendant/Movant Huttinger's

motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He

seeks relief under *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015).

## I. Background

The Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), mandates a fifteen-

year minimum sentence and authorizes a maximum sentence of life in prison if a

defendant convicted of being a felon in possession of a firearm has three previous

convictions for a serious drug offense or a violent felony. If the defendant does not

have three qualifying convictions, the ACCA does not apply, and the defendant faces a maximum sentence of ten years in prison. *See* 18 U.S.C. § 924(a)(2).

A grand jury indicted Huttinger on April 7, 2008, on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count 1); and one count of distribution of marijuana in violation of 21 U.S.C. § 841(a)(1) (Count 2). As to Count 1, the caption of the indictment stated the penalty was 15 years to life in prison. *See* Indictment (Doc. 1) at 1-2.

The parties reached a plea agreement. As relevant here, Huttinger agreed to plead guilty to Count 1, being a felon in possession of a firearm, and the United States agreed to dismiss Count 2 and to seek a three-level reduction in Huttinger's offense level for his acceptance of responsibility. *See* Plea Agreement (Doc. 24) at 2 ¶ 5, 7-8 ¶¶ 12-13. Huttinger entered a guilty plea to Count 1 on May 16, 2013. *See* Minutes (Doc. 27).

A presentence report was prepared. Huttinger's base offense level was found to be 33. He received a three-level reduction for acceptance of responsibility and timely notification of plea for a total offense level of 30. His criminal history category was VI. His advisory guideline range was 180 to 210 months. *See* Sentencing Tr. (Doc. 43) at 5:9-22. The Court sentenced Huttinger to serve 210 months in prison, to be followed by a five-year term of supervised release. *See* Minutes (Doc. 36); Judgment (Doc. 37) at 2-3. Huttinger appealed.

The Ninth Circuit affirmed the sentence on October 28, 2009. Mem. (Doc. 48) at 2, *United States v. Huttinger*, No. 09-30006 (9th Cir. Oct. 28, 2009) (unpublished mem. disp.). The United States Supreme Court denied Huttinger's petition for writ of *certiorari* on January 11, 2010. Clerk's Letter (Doc. 51) at 1.

Huttinger filed a motion on February 22, 2010, to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. The Court denied the motion and a certificate of appealability on May 25, 2010. (Doc. 57). The Ninth Circuit denied a certificate of appealability on December 20, 2010. (Doc. 60). On June 26, 2015, the United States Supreme Court in *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551, 2557 (2015), held that the residual clause in the Armed Career Criminal Act was so vague that "[i]ncreasing a defendant's sentence under the clause denies due process of law."

Huttinger filed a second motion under 28 U.S.C. § 2255 in this Court on September 15, 2015. The Court denied the motion for lack of jurisdiction on September 16, 2015. The Court also denied a certificate of appealability. *See* Order (Doc. 68) at 2-3. Huttinger applied to the Ninth Circuit on May 24, 2016, for leave to file a second or successive motion under 28 U.S.C. § 2255. The Ninth Circuit granted his application on November 8, 2016. *See* Order (Doc. 69) at 1-2, *Huttinger v. United States*, No. 16-71652 (9th Cir. Nov. 8, 2016). Huttinger filed the instant § 2255 motion in this Court as of May 24, 2016. *See Orona v. United*

*States*, 826 F.3d 1196, 1199-1200 (9th Cir. 2016) (per curiam).

Although the Ninth Circuit granted Huttinger leave to proceed with a second or successive § 2255 motion, "[a] district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." 28 U.S.C. § 2244(b)(4). *Johnson* presents a new rule of constitutional law made retroactive, in *Welch v. United States*, ___ U.S. ___, 136 S. Ct 1257, 1265 (2016), to cases on collateral review. The rule previously remained unavailable, as no legal authority had held the ACCA's residual clause unconstitutionally vague until *Johnson*. This development meets the requirement of 28 U.S.C. § 2255(h)(2).

## II. Motion to Dismiss

The United States seeks to dismiss Huttinger's motion as untimely and for lack of jurisdiction. *See* Answer (Doc. 36) at 1-3, 12. An untimely claim does not deprive the Court of jurisdiction. *See, e.g.*, *McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924, 1928 (2013). Further, a *Johnson* claim, regardless of its merits, proves timely if filed within one year of *Johnson*. *See* 28 U.S.C. § 2255(f)(3); *Dodd v. United States*, 545 U.S. 353, 357 (2005). Huttinger timely filed his motion. The motion to dismiss is denied.

## III. Analysis

Huttinger had two prior convictions for a serious drug offense. *See* Presentence Report ¶¶ 37-38. Consequently, the question arises whether any of Huttinger's other convictions constituted a "violent felony." The Court must address Huttinger's conviction for felony assault. The parties agree that this conviction was incurred under Mont. Code Ann. § 45-5-202(2)(b) (1995). *See* Information at 1 (Doc. 70-1 at 1), *State v. Huttinger*, No. CDC-95-583 (Mont. 8th Jud. Dist. Ct. Dec. 29, 1995); Plea Agreement (Doc. 70-1 at 5-6), *Huttinger*, No. CDC-95-583 (Mont. 8th Jud. Dist. Ct. May 9, 1995).

### A. "Violent Felony"

*Johnson* invalidated the ACCA's residual clause. After *Johnson*, the ACCA, in effect, defines a "violent felony" as a felony that:

    (i)      has as an element the use, attempted use, or threatened use of physical force against the person of another; or

    (ii)     is burglary, arson, or extortion, [or] involves use of explosives[.]

18 U.S.C. § 924(e)(2)(B). Huttinger's sentence under the ACCA remains proper if his Montana conviction either meets the elements of the "force clause" in subsection (i), or is equivalent to one or more of the "enumerated offenses" in subsection (ii). The parties agree that felony assault fails to meet the elements of any of the offenses listed in subsection (ii). The force clause remains the sole issue

here.

### 1. Categorical Comparison of State Elements to Federal Elements

To apply the ACCA, federal sentencing courts must consider convictions entered in more than 50 jurisdictions, containing widely varying elements, to determine whether an individual defendant's criminal history meets the ACCA's terms. The Supreme Court has applied the "categorical analysis" to decide the issue. The "categorical" method focuses exclusively on the elements of a predicate conviction, as defined by the jurisdiction of conviction, and compares those element to the elements of the ACCA, as defined by federal law. *See Taylor v. United States*, 495 U.S. 575, 590-92 (1990). The facts of Huttinger's conviction for felony assault prove "quite irrelevant" under this analysis. *Moncrieffe v. Holder*, __ U.S. __, 133 S. Ct. 1678, 1684 (2013) (internal quotation marks omitted).

In comparing Huttinger's prior convictions with the ACCA elements, the Court may consider only "what the state conviction necessarily involved," as if every conviction "'rested upon nothing more than the least of the acts' criminalized" by the state statute. *Id.* (quoting *Johnson I*, 559 U.S. at 137). The federal elements must be met in every realistic instance of conviction under the state statute. For this reason, case law applying the state statute to specific acts or defining the issues a jury must decide can be useful in determining whether the

state statute meets the elements of the federal definition of a "violent felony." *See, e.g.*, *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1016 (9th Cir. 2006).

Regardless of the label that a state uses to describe the elements of a predicate conviction, a federal court must consider whether the full range of conduct captured by the state's elements falls within the range of conduct captured by the federal elements. The state statute need not expressly contain use of force as an element, so long as a conviction under the state statute necessarily will include proof beyond reasonable doubt that the defendant used, or attempted or threatened to use, physical force against the person of another.

Conversely, even if the state statute expressly contains "use of physical force" as an element, it will not meet the requirements of the ACCA's force clause if the state defines "physical force" in the common-law sense that includes "even the slightest offensive touching." *See, e.g.*, *also Johnson v. United States* ("*Johnson I*"), 559 U.S. 133, 138-42; *see also, e.g.*, *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1087-89 (9th Cir. 2015) (holding that New Jersey's definition of "attempt" encompasses more conduct than federal "attempt," so that conviction for attempted aggravated assault failed to qualify as a "crime of violence" under commentary to U.S.S.G. § 2L1.2); *Ortega-Mendez*, 450 F.3d at 1016-18; *United States v. Bonat*, 106 F.3d 1472, 1475-76 (9th Cir. 1997).

## 2.  The Force Clause of the ACCA

The "force clause" provides that an offense qualifies as a violent felony if it "has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)92)(B)(i).  The Supreme Court has emphasized that a state offense meets the federal force clause only if state law requires the state to prove beyond reasonable doubt that the defendant "used" or attempted or threatened to "use" force "against" another.  *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (interpreting 18 U.S.C. § 16(a)); *see also Johnson I*, 559 U.S. at 140 (applying reasoning of *Leocal* to force clause of ACCA).

As the *Leocal* Court explained, "in its context and in light of the terms surrounding it," the "critical aspect" of the force clause is that the state must prove the defendant actively employed physical force "*against the person . . . of another.*"  *Leocal*, 543 U.S. at 9 (emphasis in original).  "[W]e would not ordinarily say a person 'use[s] . . . physical force against' another by stumbling and falling into him."  *Id.*  In this context, a "use . . . of physical force against the person" of another requires "active employment" of force and "a higher degree of intent than negligent or merely accidental conduct."  *Id.* (citing *Bailey v. United States*, 516 U.S. 137, 145 (1995)).

After *Leocal*, it is clear that federal definitions of violent felonies or crimes of violence "cover[] only those crimes involving intentional conduct." *Fernandez-*

*Ruiz v. Gonzales*, 466 F.3d 1121, 1123 (9th Cir. 2006) (en banc). Intentional conduct involves a *volitional use,* or attempted or threatened use, of physical force *against* another. S*ee United States v. Trinidad-Aquino*, 259 F.3d 1140, 1145 (9th Cir. 2001), *cited with approval in Leocal*, 543 U.S. at 9. Federal courts turn to the Model Penal Code as a "source of guidance . . . to illuminate the meaning of and distinctions between intent requirements,". *See Trinidad-Aquino*, 259 F.3d at 1145 (internal quotation marks and citations omitted).

Like the meaning of "use" and "physical force," the meaning of the phrase "threatened use of physical force" in 18 U.S.C. § 924(e)(2)(B)(i), presents a question of federal law rather than state law. *Leocal*, 543 U.S. at 8-9; *Johnson I*, 559 U.S. at 138. A "threatened use of physical force" might be interpreted in a targeted sense, that is, a "communicated intent to inflict harm or loss on another." *See, e.g.*, Black's Law Dict. 1489 (7th ed. 1999). This threat may come with, or without, intent to cause actual harm or loss. *See* 2 Wayne R. LaFave, *Substantive Criminal Law* § 16.3(b) at 569 (2d ed. 2003).

Alternatively, a "threatened use of force" might be taken in a more diffuse sense to indicate a substantial risk that harm or injury will occur, without a targeted threat. For instance, federal courts have determined that the mere touching of another constitutes a "threatened use of force" when the touching takes place with a deadly weapon, *See United States v. Grajeda*, 581 F.3d 1186, 1191-92 (9th Cir.

2009); *see also United States v. Dominguez*, 479 F.3d 345, 349 (5th Cir. 2007); *United States v. Treto-Martinez*, 421 F.3d 1156, 1160 (10th Cir. 2005) (both noting that touching with a deadly weapon "could always lead to more substantial and violent contact").

An effort to integrate the concept of a "threatened use of force" with the Model Penal Code's definitions of purposeful, knowing, or reckless intent, *see* Model Penal Code § 2.02(2)(a)-(c), indicates that an offense contains a "threatened use of physical force against the person of another" as an element when the State is required to prove beyond reasonable doubt one of the following:

1. The defendant meant to cause another to apprehend the use of physical force, or was aware it was practically certain he would cause such apprehension, or at least knew of and consciously disregarded a substantial risk he would cause it; or

2. The defendant's conduct created a substantial risk that physical force would be used and the defendant meant to create that risk, or was aware creation of the risk was practically certain, or at least knew of and consciously disregarded the risk.

Courts have determined that a state offense that fails to meet the level of intent required by federal law to constitute a "threatened use of force" cannot be classified as "violent felony" under the ACCA's force clause. The Ninth Circuit in

*United States v. Castillo-Marin*, 684 F.3d 914, 923-24 (9th Cir. 2012), held that first-degree assault under New York law fails to qualify as a crime of violence under the force clause of U.S.S.G. § 2L1.2(b)(1)(A)(ii), because its intent element reaches more conduct than the federal intent element. By contrast, the Ninth Circuit in *United States v. Lawrence*, 627 F.3d 1281, 1287-88 (9th Cir. 2010), determined that second-degree assault under Washington law meets the intent element of the ACCA's force clause and thus qualifies as a violent crime. *See also Grajeda*, 581 F.3d at 1192-97 (analyzing nature of intent required to constitute assault under California law).

### B. Felony Assault

At the time Huttinger committed felony assault, Montana law provided that "[a] person commits the offense of felony assault if he purposely or knowingly causes reasonable apprehension of serious bodily injury in another by use of a weapon." Mont. Code Ann. § 45-5-202(2)(b) (1995). The statute's "knowing element" requires the state to prove that the defendant is at least "'aware that harm is practically certain'" to follow from his conduct. *See Voisine*, 136 S. Ct. at 2278 (quoting Model Penal Code § 2.02(2)(b)). It also appears to require the state to prove that the defendant *knowingly caused* another person to experience reasonable apprehension of serious bodily injury. *See, e.g.*, Mont. Code Ann. § 45-2-103(4).

Case law interpreting the statute provides guidance. Montana eschews the

"result-oriented" definition of knowingly in favor of the "conduct-oriented" definition. The Montana statute's intent element is met if the defendant is aware of his conduct, regardless of whether he is aware that harm may follow. A threat communicated as an intent to cause harm is not a required element that the jury must find. A defendant's awareness of his conduct differs from a purposeful, knowing, or reckless intent to cause another to apprehend injury. The following cases confirm that the reasonable-apprehension portion of Montana's felony assault statute fails to meet the force clause of the ACCA.

### 1. *State v. Misner* and *State v. Haberg*

The defendant in *State v. Misner*, 763 P.2d 23 (Mont. 1988), engaged in several verbal altercations with an employee of a welfare office. Misner left the welfare office after one such altercation. The secretary at the welfare office saw Misner retrieve a rifle from his truck and begin shaking the rifle and screaming in the direction of the welfare office. The secretary screamed, "Oh my god, he's got a gun." *Misner*, 763 P.2d at 24. The welfare office employee did not "see" the gun as he was working in the back of the office at the time. The employee unequivocally testified nevertheless to his apprehension of serious bodily injury. *Id.* at 25. The court affirmed Misner's conviction for felony assault under Mont. Code Ann. § 45-5-202.

The defendant in *State v. Haberg*, 920 P.2d 86 (Mont. 1996), also faced

felony assault charge. A police officer testified that he had observed an apparently drunken male passenger lean over with his arms between his legs as if hiding something during a traffic stop. *Haberg*, 920 P.2d at 88. The police officer further testified that he saw an empty holster on the seat between the driver and the passenger. *Id.* The officer testified that these facts, along with the passenger smelling of alcohol and sounding belligerent, led him to apprehend serious bodily injury. The court affirmed Haberg's conviction on the grounds that it was not necessary for the officer to have observed personally the gun in order for the officer to have experienced reasonable apprehension of bodily harm as required by the statute. *Id.* at 90. The state simply had to establish that the officer had reason to be apprehensive of serious bodily injury by a weapon.

### 2. *State v. Smith*

The court in *State v. Smith*, 95 P.3d 137 (Mont. 2004), addressed the issue of whether a defendant could commit assault with a weapon while talking on the phone with his ex-wife. Smith threatened to kill the ex-wife's new boyfriend during the conversation and made a metallic clicking sound like a gun being cocked. *Smith*, 95 P.3d at 138. The trial court denied Smith's motion to dismiss on the basis that the statute is "designed to punish, to criminalize, the use or threatened use of a weapon, and that's what occurred here." Id. at 139. Smith appealed.

Smith argued, in part, that the affidavit in support of the felony assault charge failed to state the required elements to establish the offense. Smith alleged that the victim had to "see" the weapon or reasonably believe that there is "a weapon being utilized by the perpetrator. " *Id.* at 141. The court recognized that its case law permits two different applications of the statute.

The first application occurs when a person uses a weapon, or what reasonably appears to be a weapon, to cause reasonable apprehension of serious bodily injury in the victim. *Id.* A person violates the statute under the second application "when he *simply causes* reasonable apprehension that the victim will sustain serious bodily injury from a weapon, if it reasonably appears to the victim that a weapon is involved, whether actually seen or not." *Id.* (emphasis in original).

The court suggested that its holdings in *Mizner* and *Haberg* stand for the proposition that the second application supports a scenario in which the statute may be satisfied by "the mere existence of circumstances which lead the victim to reasonably apprehend that he or she will be injured by a weapon." *Id.*, citing *Misner*, 763 P.3d at 26; *Haberg*, 920 P.2d at 90. In fact, that court described *Hagberg* as demonstrating that "it is not technically correct that 'use of a weapon' (or, presumably, what appears to the victim to be a weapon) is a requisite element of the offense" of felony assault or assault with a weapon. *Smith*, 95 P.3d at 143.

The court agreed that the second application of the "reasonable

apprehension" portion of Montana's assault with a weapon statute does not require the State to prove actual "use" of a weapon. It focuses on what the defendant "simply causes" rather than what the defendant "knowingly causes." The court ultimately concluded that Smith had not committed assault with a weapon, however, due to the fact that the statute did not apply where one person (the ex-wife) reasonably apprehended serious bodily injury to a third party (her boyfriend). *Id.*, at 143-44.

### 3. *State v. Martin*

The defendant in *State v. Martin*, 23 P.3d 216, 223 (Mont. 2001), appealed his conviction for felony assault on the basis that "the State did not establish that he purposely or knowingly intended to create an apprehension of serious bodily injury." The felony assault charge arose from Martin's conduct while he was running away from officers. An officer testified that he chased Martin into and alley where Martin entered a small enclosure boarded up with plywood. *Martin*, 23 P.3d at 223. The officer testified that he saw Martin look "directly at me, and [Martin's] gun turned and pointed directly at me." I*d*. at 223-224. Martin testified "that he did not intend to make [the officer] think he was going to shoot." *Id.* at 224.

The court discussed the distinction in Montana law between the defendant's awareness of his actions, on the one hand, and the element of causing reasonable

apprehension of injury, on the other hand. The court separated the notion of causation from the defendant's acting knowingly. *Id.* at 224. The court recognized that the defendant's actions control the "knowingly" or "purposely" element of felony assault. *Id.* On the other hand, the victim's mental state determines whether the defendant's actions caused reasonable apprehension of serious bodily injury in another. *Id.* The court determined that the officer's awareness of Martin's earlier shooting of another officer and Martin's flight, and the way that Martin pointed the gun at the officer, provided sufficient evidence for the jury to find that the officer felt reasonable apprehension of serious bodily injury. *Id.*

### 4. *State v. Birthmark*

Finally the Montana Supreme Court in *State v. Birthmark*, 300 P.3d 1140 (Mont. 2013), laid to rest any doubt as to the applicable law regarding the mental state required for a felony assault conviction. The state charged Birthmark with partner or family member assault ("PFMA"). The statute required the state to prove that Birthmark "purposely or knowingly cause[d] reasonable apprehension of bodily injury in a partner or family member." *See* Mont. Code Ann. § 45-5-206(1)(c). Unlike the felony assault statute, the PFMA statute requires the state to show reasonable apprehension of bodily injury, as opposed to serious bodily injury. Both statutes share the intent element. The defendant must purposely or knowingly cause the victim reasonable apprehension of injury.

Birthmark testified at trial that he had been "jumped" by people at a party that he had left just before arriving at his mother's house. He claimed to have been "concerned for his sister who was at the party." *Birthmark*, 300 P.3d at 1141. At his mother's house, Birthmark stared at this mother and brother, used loud language, picked up a large stick, talked about finding a knife, and threatened to "bash their heads in and slit their throats." *Id.* at 1143. He explained, however, that "his anger displayed at his mother's house was not directed at his mother and brother but was directed toward the people at the party." *Id.* He suggested that his mother and brother "inferred . . . or assumed" that his threats were directed at them. *Id.*

The court instructed the jury that a person acts knowingly if he is "aware of his or her conduct." *Id.* at 1143. Birthmark argued on appeal that the trial court instead should have instructed the jury on the "result-based" definition of knowingly. This instruction would have require the state to prove that Birthmark was aware of a high probability that his actions would cause his mother and brother reasonable apprehension of bodily injury. *Id.*; Mont. Code Ann. § 45-2-101(35) (second sentence).

The court acknowledged that Birthmark wanted the jury to consider that "he did not intend [his] actions to cause his brother and mother to have a reasonable apprehension of bodily injury." *Id.* at 1143. The court noted, however, that

Birthmark "did not materially contest his actions at his mother's house." The court further reasoned that Birthmark would not have been entitled to a "result-oriented" instruction even if his counsel had requested it. *Id.* at 1144.

The court emphasized, with regard to the second element, that the PFMA statute relies on an objective standard that asks whether a reasonable person under similar circumstances would have reasonably apprehended bodily injury. The court noted the "well established" state of the law under the "reasonable apprehension" prong with its focus on the reasonable apprehension of the victim based on an objective standard rather than any intent by the defendant. *Id.* at 1143 citations omitted). The objective standard asks whether "a reasonable person under similar circumstances would have reasonably apprehended bodily injury." *Id.*, quoting *State v. Finley*, 252 P.3d 199 (Mont. 2011).

## 5. Conclusion

These cases make clear that a defendant can be convicted of felony assault, or assault with a weapon, under Montana law if his conduct "simply causes reasonable apprehension of serious bodily injury." *Smith*, 95 P.3d at 142. Nothing requires the jury to find that a defendant meant to cause such apprehension, was aware of a high probability that he would cause it, or consciously disregarded a substantial risk that he would cause it.

The defendant's "subjective intent" plays no role in a reasonable-

apprehension assault. As a result, the state need not prove, as an element, the use, attempted use, or threatened use, of physical force against the person of another to the standards required for federal sentencing law.  Categorically, a conviction under Mont. Code Ann. § 45-5-202(2)(b) (1995), fails to qualify as a violent felony under the force clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(i).

### C.  The Armed Career Criminal Act Does Not Apply to Huttinger

The residual clause applied to convictions for offenses "involv[ing] conduct that presents a serious potential risk of physical injury to another."  A reasonable jurist could have thought before *Johnson* that a reasonable-apprehension felony assault fit that description. The Court no longer can rely on the residual clause. Montana's felony assault statute meets neither the federal elements of the force clause, 18 U.S.CC. § 924(e)(2)(B)(i), nor the elements of an offense listed in (B)(ii). Huttinger's conviction for felony assault fails to qualify as a "violent felony."

Huttinger's motion under 28 U.S.C. § 2255 must be granted, and he must be re-sentenced.  A certificate of appealability need not be considered because this decision is not adverse to Huttinger.  *See* Rule 11(a), Rules Governing § 2255 Proceedings. This decision means only that Huttinger may not be subject to sentencing as an armed career criminal.  His new sentence will be determined by applying 18 U.S.C. § 3553(a), and except as limited by *Peugh v. United States*, __

U.S. __, 133 S. Ct. 2072 (2013), the 2016 Sentencing Guidelines.

Accordingly, IT IS HEREBY ORDERED as follows:

1.  Huttinger's motion to vacate, set aside, or correct his sentence (Doc. 70) is GRANTED.

2.  The Judgment entered on December 30, 2008 (Doc. 37), is **VACATED**.

3.  Sentencing is set for **September 7, 2017,** at **11:00 a.m.** in the Missouri River Courthouse, Great Falls, Montana.

4.  The United States Probation Office shall conduct a supplemental presentence investigation and prepare a new presentence report omitting Armed Career Criminal designation.  Fed. R. Crim. P. 32(c), (d); 18 U.S.C. § 3552(a).

5.  The probation officer shall disclose the completed report, except for recommendations of the probation officer, to Defendant, counsel for Defendant, and counsel for the government on or before **July 24, 2017.**  The probation officer shall not disclose any recommendation made or to be made to the Court.

6.  If restitution is mandatory, the probation officer shall discuss a payment plan with Defendant and shall make recommendations to the Court concerning interest and a payment schedule.

7.  Counsel shall attempt in good faith to resolve disputes over any material in the presentence report. Unresolved objections to be relied upon at sentencing shall be presented to the probation officer on or before **August 8, 2017.**  U.S.S.G. §

6A1.2.  **Any unresolved objections are expected to be included in the pre-sentence report, not in a sentencing memorandum.**

8.  The presentence report, in final form, including any unresolved objections, shall be delivered to the Court and the parties on or before **August 17, 2017.**

9.  Sentencing memoranda and supporting documents addressing all relevant sentencing issues shall be filed on or before **August 24, 2017.**  Absent good cause shown, sentencing memoranda and supporting documents filed after **August 24, 2017,** will not be considered in addressing sentencing issues.  Failure to timely file sentencing memoranda may result in imposition of sanctions against counsel.

10.  Responses to sentencing memoranda shall be filed on or before **August 31, 2017.**

11.  Reply briefs will not be accepted for filing in sentencing matters.

12.  The Court will resolve objections included in the Addendum to the presentence report at the sentencing hearing in accordance with U.S.S.G. § 6A1.3.

13.  All parties that intend to have witnesses testify at sentencing shall give notice to this Court ten days prior to the sentencing date.

14.  The United States Marshals Service must transport Brice Huttinger, BOP # 10030-046, to the District of Montana.  Huttinger must be present in Montana and available to consult with counsel at least 30 days before sentencing.

15.  When an Amended Judgment is entered in the criminal case, the clerk shall enter judgment in the civil action, by separate document, in favor of Huttinger and against the United States.

DATED this 11th day of May, 2017.


Brian Morris
United States District Court Judge

cc:     USMS
        USPO